[No. 1568.]

IRENE M. ROBINSON, Respondent, v. HENRY KIND
AND EUGENE HOWELL, Appellants.

| 25 261 |
| f25 344 |

Practice on Appeal—Rules of Court—Motion to Dismiss. A motion to dismiss an appeal under subdivision 1 of rule III of the supreme court, providing that an appeal may be dismissed on motion if the transcript of the record is not filed within the prescribed time, will be denied where the motion to dismiss is not accompanied by the certificate of the clerk below, required by subdivision 2 of the same rule, showing the character, date and amount of the judgment, notice of appeal, etc.

Idem—Idem—Right of Appellant to Have Proper Record. Any litigant has a right to have his record on appeal furnished him for filing properly indexed as required by the rule of this court and properly certified as required by statute, before he is required to file or offer the same for filing.

Idem—Time of Filing—Notice of Motion for New Trial. Where an oral decision had been rendered on all of the issues, a notice of motion for a new trial was not premature because served and filed before the findings of fact had been made.

Idem—Exceptions. A paper found in the record, endorsed as appellants' exceptions to the findings, and filed sixty days after the findings were filed, and containing exceptions which were not made or allowed as required by statute, should be stricken out on motion.

Idem—Undertaking. One undertaking is sufficient for an appeal taken both from the judgment and from an order denying a new trial.

RES ADJUDICATA—PARTIES. That appellant had succeeded to the interest of other parties in the case does not make a previous appeal binding as the law of the case as to his rights, where the parties to whose interests he succeeded were not parties to the action at the time of the previous appeal and the decision of such appeal was based on the refusal of the court below to make them parties.

TENANTS IN COMMON—RIGHTS IN PROPERTY—INJUNCTION. Where a plaintiff in an action to set aside a trust deed, executed by her jointly with others, claimed sole ownership of the property conveyed, and there was no evidence that she was sole owner, but it appeared that those with whom she executed the deed owned a half interest in the property, which they afterwards conveyed to the beneficiary under the deed, thereby making him a part owner, it was error to enjoin him from claiming or asserting any title to the property, or exercising any power or authority over it.

IDEM—IDEM—PARTNERS—RIGHT TO DISPOSE OF INTEREST. It is elementary that partners are equally entitled to the possession, use and enjoyment of the partnership property, and that tenants in common are each entitled to the possession, use and enjoyment of the common property, and that one tenant in common has the right to sell and dispose of his interest in the common property as he may deem fit and proper.

TRUST DEED—WANT OF CONSIDERATION—FRAUD. In an action to set aside a trust deed for want of consideration and for the fraudulent character of the claim upon which the expressed consideration was based, where the testimony of the claimant, that the expressed consideration was an amount due for services rendered at an agreed salary, is uncontradicted; and where it is admitted in plaintiff's brief that the amount of $1,865 was due the claimant; and where it appeared that the debt which the deed was given to secure was for services which were faithfully performed under a contract signed by plaintiff, and there was no averment that the consideration proved was inadequate, a decree for plaintiff should be reversed.

## ON PETITION FOR REHEARING.

DEEDS—CAPACITY TO CONVEY—PERSONS NON COMPOS MENTIS. A conveyance by a person *non compos mentis*, who has not been placed under guardianship, is voidable, and not void.

IDEM—IDEM—IDEM—EQUITY. A conveyance executed by a person *non compos mentis* cannot be set aside as a nullity without protection of the equities of other parties thereto.

APPEAL from the Third Judicial District Court, Eureka County; *A. L. Fitzgerald*, Judge.

Action by Irene M. Robinson against Henry Kind and Eugene Howell. From a judgment for plaintiff, and an order denying a motion for a new trial, defendants appeal. Reversed.

The facts sufficiently appear in the opinion.

*Thomas Wren,* for Appellants:

I.   On the ____ day of July, 1899, and before the transcript on appeal had been filed, counsel for respondent moved the court to dismiss the appeal upon several grounds, viz.: Because the transcript was not filed in time.   Counsel did not offer in support of this ground the certificate of the clerk required by rule III of this court.   Counsel assumed on the oral argument that the transcript had been filed when the notice of motion had been given.   This was not the fact. Soon after the appeal had been perfected the appellant requested the clerk of the court below to furnish a transcript, but instead of doing so the clerk sent him the statement on motion for a new trial and the other papers in the case tied up with a string.   Many of the exhibits had not been identified by the judge, although a stipulation of counsel for the respective parties had been filed on the 19th day of January, 1899, forty days before the notice of appeal was filed and served authorizing their identification.   Efforts were made from the time the papers first came to appellants to have the exhibits identified and a properly certified record sent up.

II.   On appeal from a judgment and an order overruling a motion for a new trial it has been the uniform practice to give only one undertaking on an appeal of this character. The practice should not now be disturbed.   (*Chester* v. *Bakersfield T. H. A.,* 64 Cal. 42; *Sharon* v. *Sharon,* 67 Cal. 185; cases distinguished in *Corcoran* v. *Desmond,* 71 Cal. 102.)

III.   The notice of motion for a new trial was filed after the decision of the court.   In the engrossed statement on motion for a new trial it appears that the court rendered its decision June 1, 1898.   In the decree entered it is recited that the oral decision of the court was rendered on the 1st day of June, 1898.   The notice of motion for new trial was made after the decision had been rendered.   (*Robinson* v. *Benson,* 19 Nev. 331; *Elder* v. *Frevert,* 18 Nev. 283.)

IV.   In the second finding the court finds that at the time the deed of trust was made, appellant Howell was the agent and representative and acting for the respondent in the settlement of the estate of the deceased husband of the said respondent.   Now, there is not a scintilla of evidence to support this finding; the only testimony in regard to the

settlement of the estate is that of Howell, and he testifies
that the estate was settled in May, 1892, more than two
months prior to the making of the trust deed.   The court
further finds that Howell had a secret agreement and under-
standing with the Churches that he (Howell) should become
interested in the property and be an owner of the undivided
interest therein; there is not a particle of testimony to sup-
port this finding; on the contrary, Howell testified that the
Churches and Mrs. Robinson had agreed that, in addition to
his wages, he should have an interest in the property.   There
was nothing secret about it.   The court further finds that at
the date of the execution and delivery of the trust deed Mrs.
Robinson was not personally indebted to Howell.   There was
no testimony upon this point except that of Howell, and his
testimony shows that she was indebted to him for consider-
able sums 'of money advanced to pay creditors of the estate.

V.   If fraudulent misrepresentations had been pleaded,
the proof would have been insufficient.   What false or fraud-
ulent representations did Howell make to Mrs. Robinson?
That she employed him at $200 a month is not denied; that
he rendered services under that employment is not denied;
that his services amount in the aggregate to the sum charged
is not denied; that for a considerable time he charged less
than she had agreed to pay him is not denied; that he paid
the money for her out of his own pocket to Dr. Williams and
Harry West, at her request, is not denied;.that he gave her
a receipt for $1,225, money she had not paid him for services
rendered, to enable her to make a fair record as executrix of
her husband's estate is not denied.   The false and fraudulent
representations were not in charging the amount he did
against this property.   Was it in telling her not to go back
to Seligman; that she owned nothing there?   Howell tes-
tified that, by direction of Mrs. Robinson, everything at
Seligman at a certain date had been sold at. auction, and
purchased and paid for by the Churches, and this was not
denied. . It must be accepted, therefore, as true, but, if not
true, it would be no reason for setting the trust deed aside.
(*Royce* v. *Hampton*, 16 Nev. 25;  *Banta* v. *Savage*, 12 Nev. 151;
*Fishback* v. *Miller*, 15 Nev. 428.)

VI.   Counsel for plaintiff introduced in evidence Howell's

release of the lien upon the property under the trust deed for the amount due him. Howell had no power by his individual act to release either Mrs. Robinson or the Churches from their obligations to each other under the trust deed, or in any way to cancel it or render it invalid. Some time after he released his lien the Churches conveyed their interest in the property to Howell and he now occupies precisely the position toward Mrs. Robinson and the property that the Churches did before the conveyance to him.

*R. M. Clarke, Peter Breen,* and *N. Soderberg,* for Respondent:

I. On the first day of the July term, A. D. 1899, respondent moved the court to strike out the transcript herein, then in the clerk's office, and to dismiss the appeals because of appellant's failure to file transcript on the first day of the April term as required by rule II, or at any time before June 29th; and because there is only one undertaking in support of both appeals, and because the transcript was not indexed as required by rule IV, subdivision 3, of this court, and did not contain the documentary evidence on which the motion for new trial was decided; also, to strike out the statement on motion for new trial, for the reason, among others, that the motion for new trial was interposed prematurely; also, to strike out appellant's exceptions to the findings filed August 13, 1898, about sixty days after the findings were filed; also, because the appeals are barred by the former decision of this court. (23 Nev. 330.)

II. After the motion was set for hearing, and without leave of the court, the record was returned to the district court and materially altered. Thus: an index was supplied, the clerk's certificate taken out and a new one added; the missing documentary evidence was identified and authenticated by the district judge, and the altered record without leave of court marked filed by appellants. Afterwards the motion was argued before the court. In answer to the motion appellant has filed his affidavit in which he sets forth various alleged explanations for his neglect and failure to comply with the law and the rules of this court. No showing is made in the affidavit of accident, surprise or excusable neglect. The affidavit fails to show any reason why the motion

of respondent should not be granted. It is, moreover, indefinite as to the times when the various acts and matters therein enumerated transpired. It can, however, be ascertained therefrom that the district judge identified the documentary evidence in July, 1899, after the motion to dismiss was interposed.

III. There is no record on appeal which this court. can consider. The one before the court was filed without authority of law or leave of the court. The original record has been destroyed as a record. (Supreme Court Rules II and III.) The rules of the supreme court have the force of statute law. (*Lightle* v. *Ivancovich,* 10 Nev. 41; *Haley* v. *Eureka Co. Bank,* 20 Nev. 410.)

IV. Respondent was not required to offer, in support of her motion to dismiss, the certificate of the clerk referred to in rule III of this court, because the transcript, though defective, was in the supreme court at the time, and supplied all the evidence necessary for a decision of the motion, and no attempt was made.to contradict it.

V. The lack of an undertaking to support each appeal is fatal. The appeal from the order is distinct from the appeal from the judgment. (Gen. Stats. 3363; Hayne, New Trial and Appeal, 2; *Chamberlain* v. *Sage,* 14 Wis. 193; *White* v. *Appleton,* 14 Wis. 190; *People* v. *Center,* 61 Cal. 192; *Sweet* v. *Mitchell,* 17 Wis. 125; *Noble* v. *Strahan,* 32 Wis. 317; *Skidmore* v. *Davies,* 10 Paige, 316; *Centerville* v. *Bachtold,* 109 Cal. 113, and cases cited.)

VI. The motion for a new trial was premature. "After decision" in our statutes means after the filing of findings, not after the announcement of an oral opinion which may be subsequently changed by the findings and conclusions of law. (Gen. Stats. 3204, 3216, 3217, 3219; Hayne, New Trial and Appeal, 18, 19, subd. 1; *Mahoney* v. *Caperton,* 15 Cal. 313; *Dominguez* v. *Mascotti,* 74 Cal. 269.)

VII. The former decision of this court is a bar. Howell, for about six months before its rendition, was the owner of the interest of the Churches. He represented the interests of the Churches on the appeal, being their successor in interest. It was optional with him to be substituted on the record in their place. Respondent could not compel his

substitution.  Had he been so substituted the former decision
must have disposed of this whole controversy.  (It is possible
the costs might have been taxed against respondent.)  Is
Howell to reap an advantage against respondent because he
failed to disclose the fact on the former appeal that he had
bought the interest of the Churches?  And how else can
justice be meted out between the parties except by holding
the former decision a bar?  (Gen. Stats. 2432; Supreme
Court Rule IX; Hayne, New Trial and Appeal, pp. 893, 896,
897; 21 Am. & Eng. Enc. Law, p. 216, 220.)

VIII.  The district judge had no authority to identify the
documentary evidence in July, 1899, after the transcript was
lodged in the supreme court and after the motion to dismiss
was filed and served.  (Gen. Stats. 3219; *Bliss* v. *Grayson*,
24 Nev. 422.)

*Thos. Wren*, for Appellants, in reply:

I.  There is no law requiring a certificate of the clerk
showing that the original statement on motion for a new trial
constitutes any part of the record on appeal.  The statement
on motion for a new trial is made by law a part of the rec-
ord on appeal.  (*Gregory* v. *Frothingham*, 1 Nev. 253; *O'Neal*
v. *Cleveland*, 3 Nev. 485; *Carson* v. *Bryant Lumber Co.*, 3 Nev.
313; *Johnson* v. *Wells*, 6 Nev. 224.)

II.  The statement is pretty well authenticated as the
statement on motion for a new trial.  The attorneys authen-
ticate it and the judge authenticates it.  The statute does not
require the endorsement of documentary evidence at the time
they are either read or referred to on motion for a new trial,
and it is not the settled law of this court that unless exhibits
and documentary evidence are endorsed at the time as hav-
ing been read or referred to they will not be considered on
appeal.  The cases of *Dean* v. *Pritchard* and *Albion* v. *Rich-
mond Co.* only relate to affidavits.  The statute provides that
" to identify the affidavits it shall be sufficient for the judge
or clerk to endorse them at the time as having been read or
referred to on the hearing."  There is no such provision in
relation to depositions, documentary evidence, testimony
taken by a reporter, or minutes of the court.  (Stats. 1893,
p. 89.)

III.   From the evidence of Judge Fitzgerald it appears
that, at the time the motion for new trial was submitted, the
exhibits were presented to the judge for identification; that
some of them, the letters especially, were in envelopes.
Instead of the certificate of identification being made upon
the letters, it was made upon the envelopes containing the
letters.   When the papers came to the appellant, tied up
with a string, the mode of identification was noticed.   The
statement was not in proper form, and it was sent back to
the clerk of the district court, to be put into proper shape,
and returned.   At the same time the attorney acting for
appellant at Eureka was instructed to request the judge to
identify the exhibits in the envelopes, by placing the certifi-
cate upon the exhibits.   When the judge was requested to do
this, he refused to do it, until appellants' exhibits were sent
to him to be reidentified in the same way.   Probably the iden-
tification in the first instance was sufficient, but certainly,
under the circumstances, it having been found necessary to
send the papers back, in order to have the record put in
legal form, it was well enough to have the exhibits identified
as requested, as a precaution against the loss of envelopes,
and a question in regard to the legality of the mode first
adopted.   The judge finally identified the exhibits.   As soon
as the statement and exhibits were received by appellant in
proper shape, they were filed by the clerk, and the case was
placed upon the calendar and set down for hearing.   Nobody
has been injured.   The argument of the case has been delayed
a short time—that is all.   It would be a hard rule that would
deprive a litigant of his day in court, on account of the fail-
ure of public officers to do their duty, when the failure can
be easily remedied.

·  IV.   It appearing from the pleadings and evidence, that
the Churches owned one-half of the property and the
respondent the other half, when the trust deed was executed
and when the suit was commenced, they were entitled, as
tenants in common with the respondent, to the joint posses-
sion and control of the property.   Before the second trial
appellant had succeeded to the interest of the Churches in
the property, and to the right to the joint possession and
control of the property, in the event that the trust deed was

declared invalid or otherwise.    The decree enjoins him from this undoubted legal right, as well as other legal rights.

V.    Finally, the decree is most inequitable.    Appellant has devoted a large amount of time and spent a great deal of money to preserve the property since the trust deed was executed.    The decree does not require the respondent to repay appellant either the amount originally due appellant, four thousand one hundred dollars, nor provide for reimbursing him for the amount he has paid out in preserving the property.

*N. Soderberg* and *Alfred Chartz*, for Respondent, on petition for rehearing:

I.    The decision heretofore rendered leaves untouched and undecided the pivotal question in the case, without a decision of which the district court would be unable to decide the case correctly upon a retrial.    The question in the case is:    What is the effect of the insanity of the grantor of a deed, where a direct attack is made upon the validity of the deed?    Is such a deed valid, voidable, or void?    The action is to set aside a trust deed upon the ground, chiefly, that the grantor, when she executed it, was *non compos mentis.*    The complaint avers, in the strongest possible terms, the grantor's insanity, as a ground for annulling the deed.    The answer specifically denies her insanity.    The evidence, though somewhat conflicting, by an overwhelming preponderance, established her insanity, and the court finds her insanity to be so established.

II.    It is an admitted fact in the case that Mrs. Robinson received nothing of value upon the execution of the deed or in consideration thereof.    Nothing was paid by appellants; nothing was received by respondent for signing it.    Hence, the question of placing the parties *in statu quo* cannot arise in the case.    It is not pretended appellants were misled by respondent, and it is conceded that Mrs. Robinson never affirmed or ratified the instrument, but, on the contrary, ever since its execution, has been diligently endeavoring to have it set aside.    It is, however, a conceded fact that appellants, or rather appellant Howell, has expended moneys and performed services in taking care of and managing the

property described in the deed. It is also an admitted fact that he has, in writing, renounced and repudiated his trusteeship under the deed.

III. Now, upon this state of facts, we submit with deference that, unless the deed of an insane person is held to be of the same validity as that of a sane person, the vital questions in the case are: (1) Is the deed of an insane person void or voidable? (2) Upon whom rests the burden of proof in a case like this to show how much, if anything, the grantor must pay to the trustee, as a condition for the annulment of the deed? Does it rest upon the insane grantor, or the sane grantee? (3) Must there be a general accounting between the parties grantor and grantee, covering all their business relation concerning the subject matter of the deed previous to its execution as well as subsequently?

IV. We submit that, if the court will decide these questions, all that is said, in the opinion filed herein in January last, in reference to the consideration for the deed, and as to whether or not its execution was induced by the fraud of Howell, becomes unimportant. "As a general rule, the contract of a lunatic is void *per se*. The concurring assent of two minds is wanting. They who have no mind cannot concur in mind with one another; and as this is the essence of a contract, they cannot enter into a contract. (1 Parsons on Contracts, 6th ed., 383.)

V. A lunatic or insane person, being of unsound mind, is incapable of executing a contract, deed, power of attorney, or other instrument requiring volition and understanding. The deed executed by an insane person, or one of unsound mind, is absolutely void. Restoration of consideration paid, if any, will not be decreed as a condition to setting it aside. (*Dexter* v. *Hall*, 15 Wall. U. S. 9; *Estate of Sarah D. Silver*, 6 Penn. St. 371; *Gibson* v. *Soper*, 6 Gray (Mass.), 279; *Harris* v. *Harris*, 64 Cal. 108.)

VI. The burden of proof in cases of accounting is upon defendant. (19 N. W. Rep. 946; 6 Wall. U. S. 315.) In cases of this description the account taken should include such property only as passed into the hands of the grantee under the transfer. (*Crowther* v. *Rowlandson*, 27 Cal. 376.)

VII. Under this rule, the question whether there was a consideration, consisting of past indebtedness from Mrs. Robinson to Howell, can hardly be material. What right has the court in this case to investigate the business relations existing between her and Howell, prior to the execution of the deed. Why should the property be subjected to a lien for her past indebtedness to Howell? To hold that it is subject to such lien, is to hold that the deed is valid, which no American court or law writer affirms. If the property is not subject to a lien for her indebtedness incurred prior to the deed, then surely it is not proper, in this case, for the court to compel an accounting of such indebtedness. If Mrs. Robinson was indebted to Howell when the deed was executed, and Howell has not received payment, is not his remedy in an action at law to recover what is due him perfect?

By the Court, MASSEY, J.:

This appeal is taken from a judgment made and entered by the district court on the 16th day of June, 1898, and from an order denying appellant's motion for a new trial made on the 2d day of February, 1899.

The appellants served and filed their notice of appeal on the 7th day of February, 1899. On the 3d day of July, 1899 —the same being the first of the July term of this court—the respondent interposed a motion to dismiss the appeal, and to strike out parts of the record, for various alleged defects.

This motion was at a subsequent date argued orally in open court.

On the 28th day of September, 1899, the cause was argued upon its merits, at which time permission was granted the Roco-Homestake Mining Company, a California corporation, claiming an interest in some of the property in controversy, through the respondent, to appear, argue orally, and file briefs in support of the judgment and order of the district court in behalf of said company.

Subsequently, upon the application of the Roco-Homestake Company, leave was granted it to withdraw the appearance and briefs filed in that behalf, upon the showing that it had ceased to have any interest in the controversy. Because of

certain objections made to the record by said company at the time of the appearance, the appellants on the 8th day of November, 1899, asked the court to vacate its order of submission before that time made, and grant them permission to withdraw a part of the record for the correction of the defects claimed by the Roco-Homestake Company to be sufficient to justify the court in dismissing the appeal.

The action of the Roco-Homestake Company in withdrawing from the cause renders it unnecessary for us to pass upon the appellants' motion to vacate the order of submission, and for leave to withdraw a portion of the record. It will, therefore, at this time be necessary to determine only those points made against the record by the respondent in her motion of July 3d.

1. It is claimed by the respondent that the appeal should be dismissed because of the failure of the appellants to file the record on appeal on the first day of the April term, 1899, as required by rule 2 of this court. It appears as an undisputed fact, upon the showing made by the affidavit of Howell, one of the appellants, that immediately after the appeal had been taken he requested the clerk of the district court to furnish a record on appeal in accordance therewith. In compliance with said demand, the clerk furnished the appellant the papers in said cause, tied up with a string and a rubber band, and without the certificate of the clerk of the court attached thereto, and without the papers being identified in accordance with the stipulation between the parties.

Some time was consumed in an effort by the appellant Howell in having the record properly made up and indexed and certified. The record in its present form was not filed in this court until the 15th day of July, 1899. It will be observed that at the time the respondent interposed her motion to dismiss there was no record on appeal filed in this court.

It is provided by subdivision 1, rule 3, that, if the transcript of the record be not filed within the time prescribed by rule 2, the appeal may be dismissed during the first week of the term (that is, the term commencing thirty days after the appeal has been perfected or the statement settled, as prescribed in rule 2), without notice. The respondent, as to

this point, relying upon the provisions of this rule, having failed to interpose her motion at the time required or the term indicated, and having permitted one term of the court to pass after her right under the rule had matured, may have waived her right to make the objection at the time she did.

Be that as it may, she has made no showing, or effort to show, the facts required by subdivision 2, rule 3, to be shown on such motion.

It is required by that subdivision, in mandatory terms, that on such motion there shall be presented the certificate of the clerk below, under the seal of the court, certifying the amount and character of the judgment; the date of its rendition; the fact and date of the filing of the notice of appeal, together with the facts and date of service thereof on the adverse party, and the character of the evidence by which said service appears; the fact and date of the filing the undertaking on appeal, and that the same is in due form; the fact and time of the settlement of the statement, if there be one; and also that the appellant has received a duly certified transcript of the record, or that he has not requested the clerk to certify to a correct transcript of the record, or, if he has made such request, that he has not paid the fees therefor, if the same had been demanded.

Manifestly, the intent of these rules, as gathered from the language used, is to prevent a litigant from delaying proceedings by failing or refusing to file the record on appeal after he has been furnished with the proper transcript, and to prevent delay, where all the steps have been taken necessary to an appeal in the lower court, and the litigant fails or refuses to have made the proper transcript or record on appeal.

The facts shown in this case do not bring it within the meaning or intention of the rule. No one of these facts was shown or offered to be shown by the respondent in the manner required by the rule; but, on the other hand, in the same motion respondent not only fails to show that an undertaking on appeal in due form had been filed, but attacks the form of the undertaking, and asks that the appeal be dismissed for defects appearing in the record and in the undertaking.

The clerk of this court, who is one of the appellants in the action, is criticised for not filing the record on appeal as originally furnished to him, and for returning the same to the clerk of the district court after the undisputed showing that the same was not in the form required by subdivision 3 of rule 4 of this court, and against the direct inhibition of subdivision 4 of the same rule, to the effect that a record which fails to conform to the rule shall not be received or filed by the clerk of the court.

It is also urged that after the respondent's motion was set for hearing the record was taken without leave from this court, and materially changed and altered, by supplying an index and certificate, etc. The record, and the showing made otherwise, is to the effect that the record was not filed until the 15th day of July, 1899.

We do not know of any rule of law or of this court that forbids or prohibits any litigant, be he officer of the court or not, from having his record on appeal furnished him for filing, properly indexed as required by the rule, and properly certified as required by the statute, before filing or offering the same for filing.

It does appear from the testimony of the judge before whom the cause was tried that, after the filing of the record, certain letters introduced in evidence—part by the appellants, and part by the respondent—were identified by him as having been used on the hearing of the motion for a new trial. This was done pursuant to a stipulation between the parties submitting the motion for a new trial to the district court.

It appears that at the time of the hearing of the motion for a new trial the judge endorsed the envelopes in which the letters had been mailed in the proper form, but did not endorse the letters. Afterwards, and before the filing of the record on appeal, the appellants, appearing by George A. Bartlett, Esq., attorney, requested the district judge to endorse the letters introduced in evidence by them. This request was objected to by Peter Breen, Esq., one of the attorneys of the respondent, unless certain letters introduced in evidence by the respondent, which were at the time not in the possession of the court or counsel, were also endorsed as

having been used on the hearing of the motion for a new trial.

Upon this showing the district judge refused to endorse any of the letters, but at a subsequent date did endorse these exhibits of both the respondent and appellants at their request. The appellants have shown by the written stipulation filed in said cause between the parties that it was expressly agreed that the motion for a new trial should be submitted to the trial court upon the engrossed statement, pleadings, records, files, exhibits, and depositions in the case, and that all such records, files, exhibits, and depositions should be considered and referred to as having been used upon the hearing of said motion for a new trial, and should be endorsed by the judge as having been so used.

It does not appear in any manner that any of the exhibits so endorsed by the district judge were not of those expressly included in the stipulation; and it appears that the failure of the judge to endorse the same was one of those excusable mistakes for which the appellants should not be held, and that the subsequent endorsement was made with the consent of the respondent, who also asked and received a like favor, in keeping with her stipulation. We are not willing to dismiss the appeal, as asked by the respondent, for this reason.

2. It is claimed by the respondent that the appeal should be dismissed because the notice of motion for a new trial was interposed prematurely. The notice of motion for a new trial was served and filed on the 15th day of June, 1898. The respondent contends that as the findings of fact were made and filed on the 16th day of June, 1898, under a line of decisions of the Supreme Court of California the notice of motion for a new trial was given prematurely, and the appeal from the order denying the new trial should therefore be dismissed.

The rule relied upon under the statutes of California does not prevail in this state, and has been so expressly decided. The judgment and decree made and entered in the action recite, among other matters, that the court rendered its oral decision in favor of the respondent upon all the issues on the 1st day of June, 1898. In effect, the same statement is recited in the statement on motion for a new trial.

This court, in passing upon a question similar to the one at bar, uses the following language with reference to the difference between the rules prevailing in this state, under our statute, and the rule prevailing in California:

"This case was decided under a statute of the State of California providing that a party intending to move for a new trial should give notice thereof within ten days after receiving written notice of the filing of the findings of the commissioner, referee, or court, when written findings are filed by the court, or of the rendering of the decision of the court, when no findings are filed, * * * and, when amendments are filed, to remedy defects in the findings within ten days after receiving written notice of the filing of such amendments. * * * 'The statute of the State of Nevada requires the party moving for a new trial to give notice of his intention within ten days after receiving written notice of the rendering of the decision by the judge.' * * * "Unless the decision here spoken of is tantamount to the findings which the court may be required to make, the contention cannot prevail. The finding of facts contemplated by the statute is the written statement of each issuable fact established by the evidence. From these determined facts the conclusion of law is deduced. The decision is the announcement by the court of its judgment, and, although based upon the settled facts of the case, such facts may never be reduced to writing, so as to constitute 'findings,' within the meaning of that term as used in the civil practice act. It is a matter of frequent occurrence for courts to announce judgment, and afterwards to prepare the findings. The decision may be rendered after or before the filing of findings, or, as is frequently the case, no findings may be made. The decision is therefore, distinct from the findings, and the time within which notice of intention to move for a new trial must be given begins to run from the announcement of the judgment." (*Elder* v. *Frevert,* 18 Nev. 283, 3 Pac. 238.)

The rule announced in the case above cited was followed and approved in *Robinson* v. *Benson,* 19 Nev. 331, 10 Pac. 441. Even under the rule announced by the California court, it becomes a question whether the respondent has not waived her right to interpose this objection at this time, after

having stipulated relative to the extension of time within which the statement on motion for a new trial and amendments thereto should be served and filed, and by her stipulation submitting the motion for a new trial.

3. The respondent also by her motion asks us to strike out that certain paper found in the record, and endorsed as appellants' exceptions to the findings, filed the 13th day of August, 1898, or about sixty days after the findings were filed. This motion must be sustained. These so-called exceptions were neither made nor allowed in the manner or at the time required by the statute. Moreover, the statement on motion for a new trial, as settled and allowed by the district judge, and agreed upon by the parties, contains the written findings, and exceptions taken thereto.

Further, it is provided by section 193 of the civil practice act that when a cause has been tried by the court or by referee, and the decision or report is not made immediately after the closing of the testimony, the decision or report shall be deemed excepted to, on motion for a new trial or on appeal, without any special notice that an exception is taken thereto. (Gen. Stats. 3215.)

4. It is claimed that the undertaking on appeal is not sufficient to support the appeal from the judgment and order; that, in effect, there are two appeals, and, in order that each be effectual under the statute, each must be supported by the undertaking required by section 341 of the civil practice act. (Gen. Stats. 3363.)

Without entering into a discussion of what would be a strict compliance with the requirements of this section, it is a sufficient answer to the contention of the respondent to say that it has been, as we believe, the universal course of practice, in appeals taken from a judgment and order denying a motion for a new trial at the same time, to give but one undertaking in support of such appeals, under this section.

In this matter we have followed the rule which prevails in California, under a statute similar to our own, and from which, it is said, our statute was copied. The supreme court of that state, as early as 1883, in passing upon a question identical with the one raised by this motion, uses the follow-

ing forceful language: "The practice of filing but one undertaking, when the appeals are taken, as in this case, both from the judgment and order denying a new trial, is about as well settled as any question of that kind can be, and we do not think that it should now be treated as an open one." (*Chester* v. *Association,* 64 Cal. 42, 27 Pac. 1104.)

The rule has since been approved by that court, and in one case, decided as late as 1895, the following language in approval thereof is used: "It is the settled rule of practice in this court, when an appeal is taken from two or more orders, or from a judgment and order, whether the notice of such appeal is given in separate notices or in one instrument, the appellant must file the jurisdictional undertaking for three hundred dollars for the appeal from the judgment and from each of the orders appealed from, except in the single instance of an appeal from a judgment and an order denying a new trial." (*Ditch Co. v. Bachtold,* 109 Cal. 113, 41 Pac. 813. See, also, *Corcoran* v. *Desmond,* 71 Cal. 102, 11 Pac. 815.)

For these reasons, we deem it not proper to disturb the rule of practice that has been so long and so universally accepted and acted upon by the courts of this state, and are of the opinion that less harm will result in following the interpretation given to the statute by such acquiescence of the courts in the rule and practice as declared in the opinions above cited upon a statute similar to our own, and of which ours is a copy.

5.    The respondent also contends that the decision of this court upon the former appeal of this action is a bar to any further appeal, and therefore this appeal should be dismissed. The opinion of the court upon the former appeal will be found in 23 Nev. 330, 47 Pac. 1, 977. As the basis of this claim, respondent contends that as the record in this case shows that the appellant Howell had after the first trial and judgment in the district court, and while such appeal was pending, become the successor in interest of the Churches to the property in controversy, all matters are *res adjudicata,* under rule 9 of this court and certain general rules of equity.

The cause was reversed on the former appeal because of error in the refusal of the district court to make the Churches

parties to the action. Rule 9 of this court in no wise supports this contention. In direct language, it provides that, upon the death or other disability of a party pending an appeal, his representatives shall be substituted in the suit by suggestions in writing to the court on the part of such representatives, or any party to the record, upon which an order of substitution shall be made, and the cause shall proceed as in other cases.

It was not suggested on the former appeal, nor was it a fact, that any one of the parties thereto pending such appeal had either died, or become subject to any disability. In fact, the Churches were not parties to the action, as above stated, and the cause was reversed because of the refusal of the district court to make them parties.

We are not aware of any rule of law or of equity, or of this court, that would justify this court in making new parties to an action on appeal, other than the one above indicated. Such order of this court would necessarily imply that the court would have the power, after making new parties, to hear and determine any matter affecting their interests; otherwise, the order would be useless.

Neither are we able to understand by what course of reasoning the court would be justified in sustaining the respondent's motion based upon the general rule of equity, applied to the facts shown by the record on this and the former appeal, to the effect that in equitable proceedings all equitable claims and defenses should be set forth, and, if anything which might and should have been submitted is omitted for any cause, it will afterwards be too late to hear it, and it will be regarded as having been adjudicated. At the time the record on appeal was made at the first trial, the Churches were not parties to the action, and the appellant Howell had not succeeded to their interests; and the trial court could not at that time have rendered any judgment affecting their rights or interests in the property in controversy, nor could it at that time have rendered any judgment affecting the rights and interests of Howell as the successor to the Churches.

The motion to dismiss will therefore be overruled.

Having considered all the objections of the respondent to

the record, presented in her brief, we come now to a consideration of the cause on its merits. The respondent sought by this action to set aside and annul a certain deed of trust, and to perpetually enjoin the appellants from asserting or acting or claiming under the same, and from leasing, operating, incumbering, or in any manner disposing of, conveying, using, or selling, the property mentioned in said trust deed, or any part thereof.

The deed was executed on the 2d day of August, 1892, by the respondent and James A. and E. D. Church, to the appellant Henry Kind, and conveyed to him and his heirs and assigns certain real and personal property therein described, "upon trust, nevertheless, and to and for the uses, interests, and purposes hereinafter limited, described, and declared; that is to say, upon the sale of any or all of said property, the proceeds thereof shall be applied first to the payment of the running expenses incurred upon said property, the wages of watchmen, and taxes, and on the claim of Eugene Howell against said parties of the first part for advances and salary up to May 31, 1892, as the same appears charged upon the books of Robinson, Church & Co., but the amount not to exceed four thousand one hundred dollars. Said Eugene Howell to have possession and charge of the property as manager, as heretofore, and to work, sell, or lease all or any of said property he may deem best, and for the best interest of the respective parties, but to receive no compensation for his services. Said Eugene Howell to keep a correct set of books of all receipts from said property, and all expenditures thereon, and to furnish said party of the second part vouchers for all moneys expended upon said property. Whenever said Eugene Howell shall be paid in full, and all other payments shall be fully made as hereinbefore provided, said party of the second part shall reconvey unto the said parties of the first part all or any of said property that may remain unsold to the said parties of the first part—one-half to the said Irene M. Robinson, and one-half to said James A. and E. D. Church; said Irene M. Robinson hereby releasing any and all claims she may have against said James A. and E. D. Church in consideration of the conveyance of one-half of said property to her as aforesaid."

The respondent in her complaint alleges, in effect, that on the 1st day of August, 1892, she was the owner of the property therein described, consisting of real and personal property; that on said date she was sick in body and mind, and was in condition of both physical and mental derangement, was not *compos mentis*, and had not the capacity to manage her said property or transact business concerning the same, and was mentally incapacitated to make and execute, or comprehend the meaning of, said trust deed; that the appellant, well knowing the premises, and being fully advised concerning her physical and mental condition, and her inability to care for said property, and well knowing that she did not understand or comprehend, and had not the mental capacity to execute, the said instrument, falsely and fraudulently, and without consideration, and with intent and for the purpose to cheat and defraud her out of said property, and with a false and fraudulent intent and purpose to acquire the legal title thereto, and the power to manage and dispose of the same, falsely and fraudulently did cause and procure her to make, execute, and deliver said trust deed and conveyance for the purposes mentioned, and upon the false and pretended claim of the appellant Howell, charged upon the books of Robinson, Church & Co. for an amount not to exceed $4,000, and caused and procured the respondent, by such deed, falsely, fraudulently, and knowingly, to appoint said Howell to have charge of said property, and manage, work, sell, and lease the same, or any part thereof, as he might deem best, and apply the proceeds arising from such property in payment of expenses and the alleged indebtedness to Howell, and when said Howell should be paid, and all other payments provided for in said instrument should be made, to convey the said property, or the portion thereof remaining, one-half to the respondent, and one-half to James A. and E. D. Church.

It is further alleged that the appellants are proceeding to execute the terms of said fraudulent instrument; that they have taken possession, and are now in possession and control, of said property, under said instrument, and have advertised it for sale at public auction, etc. The deed of trust is annexed to the complaint, and made a part of the

same. After the reversal of the judgment on the former appeal, the respondent filed what is called a "supplemental complaint," in which she alleges: "The said James A. Church and E. D. Church mentioned in the complaint in said action, to wit, on the 13th day of January, 1896, conveyed all their, and each of their, right, title, and interest of, in, and to the property described in the trust deed set forth in said complaint to the said defendant Eugene Howell, and by reason of said conveyance the said James A. and E. D. Church have no longer any interest in this action."

It is further alleged therein that the appellant Howell commenced an action against the Churches on the 2d day of May, 1895, in the district court of this state, to recover a judgment against them for the sum of $5,700, mentioned in said trust deed as being due and owing to him, and thereafter recovered a judgment for that amount.

The appellants by their joint answer denied that the respondent was the sole owner of the property described in the complaint, but admitted and alleged that she was the joint owner of said property with the Churches.

They further specifically denied the physical sickness of the respondent, and the mental incapacity to manage her property, or to transact business concerning the same, at the time of the execution of the said trust deed, and that she was mentally incapacitated to make, execute, and comprehend the meaning of said trust deed at the time she executed the same.

They further specifically deny all the material allegations of the respondent's complaint, and allege affirmatively that, after said trust deed was prepared in all its details, she took time to consider the same before its execution; that the agreement upon which said trust deed was based was in all respects fair and honest, and for the best interest of all parties named therein—was founded upon a valuable consideration; that they had in all respects carried out the provisions of said deed in a just, fair, honest, and honorable manner; that Howell had endeavored to sell said property, or a portion thereof, for the purpose of fairly carrying out the provisions of said instrument, and had endeavored to obtain the best possible price for said property, and had never offered

said property for sale for an inadequate price; that the claim
of Howell charged upon the books of Robinson, Church & Co.
was a good, valid, and honest claim for services rendered by
him; that the respondent, at the time said trust deed was
made and executed, well knew that said claim was fair and
just, and that the Churches were the joint owners of said
property with the respondent; that the property needed con-
stant care of some one, to see that it was not wasted or
destroyed, that the assessment work was done upon the
mines described, and that the taxes upon the same were
regularly paid; that, for a long time prior to the execution
of the trust deed, Howell had been in the employment of the
respondent in the management of said property, and in the
settlement of the estate of Eugene N. Robinson, late husband
of the respondent, and that said trust deed continued said
Howell in the management and control of said property, and
for the payment of his services rendered the owners of said
property, and for the equitable division thereof remaining
after the discharge of the trust created.

They further allege that the expenses and charges created
by them under the terms of the trust deed are necessary to
preserve the property and to carry out its provisions. The
above, in brief, are the material averments of the answer nec-
essary to be considered in determining the question presented
under the assignment of errors. Afterwards, the appellants,
answering the supplemental complaint, admitted the con-
veyance by the Churches of their interest in the property
described in the trust deed to the appellant Howell, and also
the recovery of the judgment against the Churches for $5,700.

A retrial of the issues made was had before the court, and
a judgment and decree were rendered in favor of the respond-
ent, in which it was recited that on the 1st day of June,
1898, the court rendered its oral decision in favor of the
respondent upon all the issues, and therein decreed that the
trust deed was constructively fraudulent and void, and that
the same be canceled, annulled, invalidated, and set aside;
and the appellants, and each of them, were perpetually
enjoined from claiming, holding, or asserting any title, right,
or exercising any power or authority, over or concerning the
property described in said deed, and from making, executing,

or delivering any conveyance of said property, or any portion thereof, and from selling, delivering, or otherwise disposing of said property, or any part thereof, and from in any manner interfering with said property, or with the use and enjoyment thereof, and the said appellants are directed to surrender the said property to the respondent. There is a further judgment against them for costs.

The appellants assigned several errors as a reason for the reversal of the order and judgment appealed from, but we do not deem it necessary to consider all the assignments. Among other matters, it is claimed that the evidence is wholly insufficient to justify the judgment and decree of the court, and that the decree and judgment of the court, as entered, are in excess of the jurisdiction in proceedings of this character, under the pleadings, and that the court erred in enjoining the appellants from disposing of such property, or in any way interfering therewith.

The first matter, then, that will be considered, is the insufficiency of the evidence to justify the decree. It will be noted that the respondent claims the ownership of the property on her complaint. By the supplemental complaint, filed to avoid the effect of the reversal of the judgment on the former appeal, which reversal was based upon the refusal of the court to make the Churches (who were parties to the trust deed, and assumed to convey thereby some interest in the property upon the consideration and for the purposes therein specified) parties to the action, the respondent simply avers the conveyance of the right, title, and interest in and to the property to the appellant Howell by the deed of January 13, 1896.

The appellants by their joint answer denied the sole ownership of the respondent, and set up affirmatively the joint ownership of the property in the respondent and the Churches. By their answer to the supplemental complaint they admit the conveyance by Churches to Howell of the interest which the Churches held in the property. Under the averment of ownership in the complaint, so far as the record shows, there is not one word of evidence, record or oral, that would justify the court in deciding that the respondent was the sole owner of the property, and decreeing that

Howell, one of the appellants, admitted and alleged to have succeeded to the interest of the Churches in the property under the conveyance of January 13, '1896, be perpetually enjoined from claiming, holding, or asserting any title or right, or exercising any power or authority, over or concerning the property, and from making, executing, or delivering any conveyance of said property, or any portion thereof, or otherwise disposing of said property, or any portion thereof, and from in any manner interfering with said property, or with the use and enjoyment thereof, and directing him to surrender said property to the respondent.

The last will of Eugene N. Robinson, deceased, through whom, and under which, respondent claims title to the property, makes her his sole residuary legatee. The inventory filed by the respondent as executrix of the estate of Eugene N. Robinson, as a record in the settlement of said estate, shows that the Churches were the owners of a one-half interest in some of the property, if not all, described in the trust deed. The respondent, by her written power and authority as executrix of said estate, and as the attorney in fact of the Churches, hereinafter set out and referred to, confesses the interest of the Churches in part of this property.

It is conceded that Howell took possession of all the property as agent of the respondent, who was the executrix and the sole residuary legatee of the last will of Eugene N. Robinson, deceased, and as the agent and attorney in fact of the Churches, surviving partners of the firm composed of Eugene N. Robinson and James A. and E. D. Church, under the written power and authority given to him by the respondent. It is also conceded that, at the time of the execution of this written authority to Howell by the respondent, she held power from the Churches as their attorney in fact, and thereafter much of the partnership property included in the inventory was sold, and the proceeds applied to the payment of the partnership debts, and the debts of the estate of Eugene N. Robinson.

These facts are not disputed.

If the Churches were ever divested of their title, or divested themselves of their title, to this property, except by the trust deed and the conveyance to Howell executed on the 13th day

of January, 1896, referred to in the supplemental complaint, the record does not disclose it. Indirectly it is shown by the evidence of the respondent that Henry Rives, Esq., her attorney in the settlement of the estate of Eugene N. Robinson, had told her, a short time before the execution of the trust deed, at Eureka, Nevada, that the property all belonged to the Churches. She also testified that Howell had said the same thing, in effect, to her. The above is the only direct and indirect evidence in relation to the ownership of the property in the record.

This evidence shows, if it shows anything, that the Churches had some interest in the property, which vested in Howell under the deed of January 13, 1896.

We know of no rule of law or of equity, under the showing made in this action, that would warrant a decree so broad and far-reaching in its effects—a decree enjoining a part owner of property from selling or disposing of his interest therein, from claiming, holding, or asserting his title or right thereto, or exercising any power or authority over or concerning, the same, or from making or delivering a conveyance of his interest in said property, or any portion thereof, or from in any manner interfering with said property, or with the use and enjoyment of the same, and directing him to surrender said property to his coöwner.

We have been unable to find such rule of law or equity. We have not been cited to any such rule, and we do not believe such a rule exists.

It is elementary that partners are equally entitled to the possession, use, and enjoyment of the partnership property, and that tenants in common are each entitled to the possession, use, and enjoyment of the common property, and that one tenant in common has the right to sell and dispose of his interest in the common property as he may deem fit and proper.

The other issues presented by the pleadings, and necessary to be considered under this assignment, are the want and entire absence of consideration in making the trust deed, and the alleged fraudulent character of the claim of the appellant Howell for $4,100, named therein, for services rendered, as one of the considerations for its execution. The determina-

tion of the question of the want of consideration necessarily involves the determination of the fraudulent character of the claim for $4,100.

The court, in its written findings, practically said there was nothing due the appellant Howell on this account.

From the recitals of the decree as to the decision of the court, it appears that the court must have found, not only that there was nothing due Howell on this account, but that the trust deed was entirely without consideration, as alleged in the complaint.

With the admission of respondent in her brief, and the showing made by the testimony in the record, we are unable to understand by what process, and upon what proven facts, the court reached this conclusion.

It is admitted in her brief that at the time of the settlement of the estate of Eugene N. Robinson there was due to Howell, under Mrs. Robinson's employment, $1,225, for which Howell gave his receipt, but which was not paid.

It is further admitted that, in addition to this sum, Howell advanced, to pay the debts of the estate, $640; making a total amount of $1,865 due Howell on that account, under the employment of the respondent.

It is shown by the record, with reference to this employment and the amount to be paid therefor, that on the 21st day of October, 1890, the respondent, as executrix aforesaid and as attorney in fact of the Churches, by written power and authority, employed Howell as agent and manager, to personally supervise and attend to all business affairs and accounts, of every manner and description, pertaining and belonging to all property and property interests situated in White Pine county, Nevada, belonging to the estate of E. N. Robinson, and to the firm or partnership of Robinson and the Churches, the surviving partners whom the respondent represented as attorney in fact, for which she agreed to pay to Howell the sum of $200 per month, to commence from July 15, 1889.   (Record, vol. 1, p. 79.)

It is further shown that the respondent on the 27th day of January, 1891, gave to Howell another written authority to act for her in these matters as executrix, by which she agreed to pay to him $50 per month, to take effect from March 1,

1890, "and to be in addition and exclusive of any amount previously agreed to be paid to him for attending to the business of Robinson, Church & Co., or for the estate of E. N. Robinson." (Record, vol. 1, p. 78.)

It is not denied, and there is not even a pretense of a denial, that the appellant Howell rendered services in accordance with his employment faithfully up to the settlement of the estate of Eugene N. Robinson, on the 31st day of May, 1892, and even up to the date of the execution of the trust deed.

A careful search of the record discloses the following and only facts relating to the claim of $4,100 named in the trust deed, and secured by the property therein described, by the terms thereof.

The only witness who testified as to the amount and character of this claim was the appellant Howell, called by the respondent to testify in support of the issues in her behalf: "The sum specified in the trust deed was for my services. The services performed were under authorization of Mrs. Robinson and the Churches. The amount was the balance due to me up to the time of the execution of the trust deed. Mrs. Robinson agreed to pay me two hundred dollars a month for my services. I worked for that salary a portion of the time, but during the last year, previous to the execution of the trust deed, of my own volition I cut my salary down to one hundred and fifty dollars a month. While I was in the employ of Mrs. Robinson, I managed the entire business of preserving the estate and settling it up. I paid off eighteen thousand dollars of debts against the estate, and paid all claims against the estate west of the Rocky Mountains, dollar for dollar. The most of this money I obtained from the sale of property at Seligman. * * * The amount named in the trust deed, of forty-one hundred dollars, is for balance due me up to May 31, 1892." (Record, vol. 2, pp. 3, 4, 5.)

This was testimony on behalf of the respondent. No contradiction of it is found in the record. The respondent does not contradict it in her testimony. In fact, she testifies to no matter relating to the employment, wages to be paid, or amount due Howell on account thereof, directly; and her

indirect testimony relative to these matters in effect corroborates Howell as to his employment, and the services rendered thereunder during all these years.

As to the value of the property the record is silent, other than is shown by the inventory filed as one of the records in the estate of Eugene N. Robinson, deceased, by the respondent, referred to in another part of this opinion. Much of the property included in the inventory, before the execution of the trust deed, had been sold. No value is placed upon the property either by the averments of the complaint or the answer. That there was, so far as the respondent is concerned, a valuable consideration of $1,865 for the execution of the trust deed, is, as above stated, admitted by the respondent on this appeal.

That there was a consideration for the execution of the trust deed, so far as both the respondent and the Churches are concerned, of $4,100, is shown by the evidence of Howell; and such evidence was not contradicted, but was corroborated by the written employment from the respondent and the Churches, and by the undisputed facts relating to the services rendered under such employment from July 15, 1889, to the date of its execution. How, then, can we hold upon that evidence that the trust deed was without consideration, or, in the absence of averment or proof of value, that the consideration named and proved was inadequate?

In this connection we desire to call attention to one other matter presented in the record, involving the equities of both the appellants and the respondent under the pleadings and the proven facts. It is alleged in the answer, as a further and other consideration for the execution of the trust deed, that the property needed the constant care of some person, to see that it was not wasted or destroyed, that the assessment work was done upon the unpatented mining claims, and that the taxes were regularly paid upon said property, etc.

It was shown conclusively, and no effort was made to dispute such showing, that since the execution of the deed Howell had paid out in cash on account of taxes assessed against the property more than $700, and on account of a watchman more than $2,200.

It is a well-settled rule in equitable proceedings that relief

should be granted only upon equitable terms; and without entering upon further discussion of the law, or the necessity of a further showing as to these payments by supplemental pleadings, it seems to us, considering the nature and character of these payments, and the condition of the title as shown by the record, that the decree should, under the rule, in some manner dispose of these claims. It is therefore clearly apparent from the record that the decision of the court that the trust deed was without consideration, and that the claim for $4,100 for services, named therein as a consideration, was fraudulent and pretended, is not only not supported by the evidence, but is contrary thereto, and is contrary to the admission of the respondent made in her brief on this appeal.

The appellants also contend that the finding of the court to the effect that Howell was at the time of the execution of the trust deed the attorney in fact of James A. and E. D. Church, and at said time had a secret agreement with them that he should be interested in the property, is contrary to, and not supported by, the evidence. We confess that we fail to understand the force and effect of this finding, as applied to the issues made by the pleadings. The respondent does not aver any fraudulent act or representation having been made by the Churches, or that they were in any manner parties to any fraud in this transaction.

Aside from this, the only evidence offered, so far as we have been able to ascertain by a diligent search of the record, upon which the finding could be based, is found in the testimony of Howell to the effect that Mrs. Robinson and the Churches had agreed to give him one-third interest in the property in addition to his claim against the property. This statement was not contradicted. If it were possible, under the record, to adjust and preserve the equities of the parties in the property, taking into consideration the condition of the title, and to modify the decree so as to preserve those equities, we would deem it necessary to consider the other objections made by the appellants.

Believing it not to be possible to so modify the decree without possible wrong to either the respondent or the appellants, and it appearing that the delay and expense of a new trial

is the only proper and just way of preserving all the equities, the judgment and the order appealed from will, for the reasons above given, be reversed.

### UPON PETITION FOR REHEARING.

By the Court, MASSEY, J.:

The respondent, in her petition for rehearing, argues, in effect, that a conveyance by a person *non compos mentis* is void, and not merely voidable; and that, when the incompetency of the grantor is shown, nothing remains for the court to do except to decree the nullity of the conveyance without regard to the equities of the other parties thereto. Respondent's complaint was not drawn, the cause was not tried, and was not presented to this court upon this theory of the law.

It is not necessary to repeat again the issues made, and the evidence in support thereof, as to the ownership of the property, consideration for the conveyance, the undue influence alleged to have been exerted, and the fraud practiced in this action, as those matters were fully stated in the original opinion. We believe it is the settled law in nearly all of the American states that a conveyance of a person *non compos mentis*, who has not been placed under guardianship, is not void, but merely voidable. An exhaustive list of cases so holding will be found in the note to *Riley* v. *Carter* (Md.), 19 L. R. A. 489. An examination of these cases also shows that such was the rule of the common law, and we have been unable to find any provision of our statutes which in any manner modifies or abrogates this doctrine.

As to the further claim that where the grantor is shown to be *non compos mentis* at the time of the execution of the conveyance, but not under guardianship, keeping in mind the condition of the parties hereto, the title of the property, the consideration for the conveyance, the undue influence and fraud alleged to have been practiced, as shown by the record, and without expressing any opinion as to what equities of the appellants should be protected and preserved by the decree, because of the unsatisfactory condition of the record, we are of the opinion that it is the duty of courts exercising equitable jurisdiction in actions of this character to grant relief upon equitable terms and conditions only.

"This is an action in equity, in which the extraordinary, and, to a certain extent, discretionary, jurisdiction of the court is invoked to set aside a deed. A court of equity, when its jurisdiction is invoked to set aside deeds and contracts of a person upon the ground of insanity, acts upon equitable principles. It is by no means a matter of course for a court of equity to set aside and declare void the act of a lunatic executed during his lunacy. It does so in no case except upon equitable terms—upon the universal maxim of that court that he who seeks equity must do equity. As, for instance, where conveyances have been obtained from a lunatic at a great undervalue, with reason to believe actual fraud on the part of the grantee, yet the amount actually paid must be refunded as a condition of relief. * * * 'The court of chancery,' says Mr. Shelford, 'will not, as a matter of course, interfere to set aside contracts entered into and completed by a lunatic, even though they be void at law, but the interference of the court will depend very much upon the circumstances of each particular case; and where it is impossible to exercise the jurisdiction in favor of the lunatic so as to do justice to the other party, the court will leave the lunatic to his remedy, if any, at law.'" (*Canfield* v. *Fairbanks*, 63 Barb. 465.)

This doctrine is also supported by the following decisions, which we do not deem necessary to review: *Brown* v. *Miles*, 61 Hun, 453, 16 N. Y. Supp. 251; *Gribben* v. *Maxwell*, 34 Kan. 8; *Yauger* v. *Skinner*, 14 N. J. Eq. 389; *Riggan* v. *Green*, 80 N. C. 237; *Pearson* v. *Cox*, 71 Tex. 246; *Copenrath* v. *Kienby*, 83 Ind. 18; *Fay* v. *Burditt*, 81 Ind. 433.

We have refrained from discussing or in any manner expressing an opinion under the assignments upon the sufficiency of the evidence to support the finding that the respondent was at the time of the execution of the trust deed *non compos mentis.*

It would be useless, as the form of the decree and the condition of the record, as shown in the former opinion, are such as to preclude the modification of the judgment upon equitable terms; and, as a retrial is necessary for the adjustment of the rights of the parties (apparent, at least, from the

record now before us), the petitions of both the appellants and respondent for a rehearing will be denied.