[No. 1467.]

# DAVID WILSON, RESPONDENT, *v.* WILLIAM WILSON, APPELLANT.

EVIDENCE—CONFLICT—IMPLIED FINDINGS.—Where the evidence is conflicting and there is substantial testimony in support of the contention of the prevailing party, in the absence of express findings, the law implies findings in favor of the judgment.

JUDGMENT—MISTAKE—PRESUMPTION OF FINDINGS.—In an action to reform a deed for mutual mistake, the existence of which is denied by defendant, it was the duty of the lower court to determine which contention was correct; and, by giving judgment in favor of plaintiff, the presumption is that the issue was implicitly found in his favor.

LACHES—STATUTE OF LIMITATIONS—CONFIDENTIAL RELATIONS.—Failure of a grantee for seven years to bring suit for the correction of a deed from which part of the land intended to be conveyed was, by mutual mistake, omitted, does not show laches, where relations of mutual trust and confidence existed between the grantor and grantee, and the grantee commenced suit as soon as he discovered the mistake.

RECORDS—NOTICE TO WHOM.—The statute of this state concerning records (Gen. Stats. 2594) is not intended to impart notice other than to subsequent purchasers and incumbrancers, and the record is not notice of anything not contained in the deed.

APPEAL from the District Court of the State of Nevada, Esmeralda county; *C. E. Mack*, District Judge:

Action by David Wilson against William Wilson. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion.

*W. E. F. Deal*, for Appellant:

I. It is well established that a court of equity will never decree the specific performance of an agreement unless the plaintiff has no adequate remedy at law, and unless the agreement which it is sought to enforce is clearly and positively proven, and unless the plaintiff has been without fault on his part either in the first instance, or without laches thereafter, and unless the mistake was mutual.

II. It is not claimed here that the mistake was a mutual one, and the reason given for the acceptance of the deed as executed by plaintiff is that there existed between plaintiff and defendant a confidence consistent with their fraternal relation, and that on account thereof and of plaintiff's belief as to the competency of defendant to make and execute a proper deed passing defendant's title to said property to plaintiff, plaintiff was induced thereby not to examine and did not examine said deed to ascertain if it conformed to the agreement. This excuse is totally insufficient; no fraud or misrepresentation of any kind on the part of defendant is claimed.

III. Because a confidence existed between the parties consistent with their fraternal relation, and because plaintiff believed defendant competent to draw a deed, is no excuse for plaintiff's failure to examine it.

IV. The deed was dated November 28, 1876. It was acknowledged on March 20, 1877. Whether the deed was delivered to plaintiff or not prior to the time it was recorded, he certainly had constructive notice of its contents from the time of its record. In 1884 or 1885 plaintiff, according to his own testimony, had possession of the deed, and thus had additional actual means of knowledge of its contents. This was ten years before the suit was brought. The fact that it

would take plaintiff some time to read the deed is no excuse for his failure to do so. If it was too much trouble for him to read it to himself, he could have others read it for him, as he did in 1893. The circumstance that he all along supposed that the deed contained what he thought it did does not justify or excuse his failure to ascertain the actual fact; nor does the confidence which one man has in another, and which leads him to accept a document upon the supposition that it contained what it ought to contain, justify him in remaining idle, and in resting upon the supposition that it is as he supposed it was for sixteen or seventeen years afterwards.

V. To reform a deed on the grounds of mistake, the evidence must be clear and convincing, making out the case to the entire satisfaction of the court, and not loose, equivocal or contradictory, leaving the mistake open to doubt. (*Loomis* v. *Lazzarrovich*, 55 Cal. 52; Pomeroy's Equity Jurisprudence, sec. 859, vol. 2, p. 325.)

VI. The law is well settled that, where the question of laches is in issue, plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry. The duty of inquiry was all the more peremptory in this case, from the fact that the property itself was of an uncertain character, and was liable, as in most mining property, to suddenly develop an enormous increase of value. (*Johnson* v. *Standard M. Co.*, 148 U. S. 360; *Speidel* v. *Henrici*, 120 U. S. 377.)

VII. In order to warrant a reformation of a deed for mistake, it must be a mistake common to both parties, or through the mistake of the plaintiff, accompanied by the the fraud, knowledge and procurement of the defendant. (Pomeroy's Equity Jurisp., sec. 870; *Ranney* v. *McMullen*, 5 Abb. N. C. (N. Y.) 264; *Lewis* v. *Lewis*, 5 Or. 169; 26 Wend. 169; *Stephens* v. *Murton*, 6 Or. 193; *Dimon* v. *Providence R. Co.*, 5 R. I. 130; *Lamb* v. *Harris*, 8 Ga. 546; *Haddock* v. *Williams*, 10 Vt. 570.)

VIII. The statute of limitations provides that " an action for relief on the ground of fraud or mistake shall be brought within three years after the discovery of the facts constitut-

ing the fraud or mistake." The cause of action in this case accrued at the time of the execution of this deed. As the testimony does not show that he did not have knowledge of all the facts at that time, the respondent has been guilty of such laches in commencing this action that he cannot now be heard to complain.

IX. The consequence of an actual discovery of a mistake will be imputed to a person who might, by the exercise of reasonable diligence, have made the discovery. (*Parker* v. *Kuhn*, 21 Neb. 413; *Penobscot* v. *Mayo*, 67 Me. 470; *Boyd* v. *Blankman*, 29 Cal. 19; *Gillet* v. *Wiley*, 126 Ill. 310; *Lane* v. *Lane*, 87 Ga. 268; *Kuhns* v. *Gates*, 92 Ind. 70; *Foster* v. *Mansfield*, 146 U. S. 99; *Wood* v. *Carpenter*, 101 U. S. 135; *Hardt* v. *Heidweyder*, 152 U. S. 558.)

*P. M. Bowler, Jr.*, for Respondent:

I. Plaintiff is not, in any case of a civil nature, required to prove his case beyond a reasonable doubt. Satisfactory proof, proof which satisfies the mind, is sufficient. It is the invariable rule that, where there is a conflict of evidence, the decision of the trial court will not be disturbed.

II. Plaintiff was not guilty of laches; his claim is not stale. For the purpose of invoking the statute of limitations, or the doctrine of laches or guilty knowledge, there must be a concurrence of condition before one can be charged, to wit: (1) The means of knowledge must exist. (2) The circumstances attending the transaction must be such as to excite the inquiry of a man of ordinary prudence. Nothing short of the presence of those conditions will constitute notice or knowledge. (Wade on Notice, secs. 10, 11, 13; *Moore* v. *Boyd*, 74 Dal. 171; *Hecht* v. *Slaney*, 72 Cal. 363; *Latilatti* v. *Orena*, 91 Cal. 577.)

III. The mistake alleged is the substantive cause of action; upon its occurrence the cause of action arises, but the cause of action cannot be deemed to accrue until discovery of the mistake. The statute will not be deemed to commence running until such time as a discovery of the mistake is made. This in order that innocent parties may not suffer whilst in excusable ignorance of their rights; hence our statute excepts them from the limitation prescribed until a

discovery of the mistake. (Gen. Stats. 3644; *Lang Syne M. Co.* v. *Ross*, 20 Nev. 204; *Ward* v. *Watterman*, 85 Cal. 489.)

IV. The question in asserting a right may be materially affected by reference to the relation which subsists between the parties, as, for instance, a transaction between brothers. Considering their fraternal relation, the agreement of sale and purchase, the execution and payment of the note, and there was nothing, even to the slightest circumstance attending the whole transaction, to excite the inquiry of plaintiff to scrutinize the deed for the purpose of determining if the instrument was in proper form and embraced the interest of defendant agreed and intended to be conveyed, or to excite his inquiry to any extent whatever.

V. Counsel seem to rely upon the fact alleged, of the recordation of the deeds, as if the record thereof constituted notice or knowledge of its contents. The evident intent and purpose of the recordation acts, registry laws, is to furnish the best and most accessible evidence of title to real estate, to the end that those desiring to purchase may be fully advised of instruments of prior date affecting the subject of the contemplated purchase. The record of the deed, which by this suit is sought to be reformed, could not and cannot be held to convey by construction, or otherwise, any notice or information to plaintiff.

By the Court, BELKNAP, J.:

This is a suit for the purpose of correcting a mistake in a deed.

The evidence upon the part of plaintiff tended to show that in the month of November, 1876, defendant agreed to sell his entire interest in the Wilson mining district, in this state, consisting of mines, milling property, water rights and wood lands, for the sum of $5,000. Plaintiff agreed to purchase the same, and in the course of time a deed was executed by the defendant. After the execution of the deed defendant declared in the presence of disinterested persons that he had sold his entire interest in the district, and shortly thereafter left the locality and remained away seven years or more. Upon his return he leased from the plaintiff a portion of the property omitted in the deed of conveyance.

Afterwards others leased a portion of the same mining property omitted in the deed. A controversy arose, resulting in a lawsuit between the lessees and defendant concerning the ownership of ores extracted. It was then for the first time ascertained that defendant claimed to be owner by location of the property. It was also discovered that the deed made no mention of the omitted property. · A few months thereafter the present suit was commenced.

It was also shown that the omitted property consisted of unpatented mining claims, which, in default of the performance of annual work, were subject to location. Plaintiff has kept up this work. The deed was in the handwriting of defendant. A memorandum containing a list of the property of the defendant in the district, in which was included the omitted property, was introduced. The evidence upon the part of defendant tended to contradict some of these facts.

A decree awarding plaintiff the relief prayed for was entered by the district court.

A motion for new trial was made and denied, and defendant has appealed. One of the grounds of motion is insufficiency of the evidence to support the judgment.

The evidence was conflicting, but upon all material matters there was substantial testimony in support of the contention of the prevailing party. No express findings were made. In their absence the law implies findings in favor of the judgment.

Another point is that the mistake was not a mutual mistake. It must be conceded that a mistake must be mutual to come in the cognizance of a court of equity.

In *Botsford* v. *McLean*, 45 Barb. 478, this question was considered. The court said: " So far as mistake constitutes the ground of jurisdiction in the courts of equity to give relief, it is, I think, quite well settled that the contract will be reformed in all cases of clear mistake, or, as some of the cases say, of mutual mistake. A little confusion and misconception, I think, has crept into the cases from the inexact use of the word ' mutual,' as applied by way of description or classification of the kind of mistakes which courts of equity would reform. According to the real significance of the word

' mutual' in such connection, and the ordinary acception and understanding of the term, mutual mistake would mean a mistake reciprocal and common to both parties, when each alike labored under the same misconception in respect to the terms of the written instrument. * * * When parties have entered into a written contract it must be presumed to express their common intentions and to speak their actual agreement. But if it be clearly shown that such is not the case, and that such written contract is untrue, and misrepresents or misstates their real agreement and intentions as made and understood by both parties, in some essential particular, then such contract is a mistaken one, and such mistake may be corected in a court of equity, in respect to such particular error."

In cases like the present, where one side claims that a mistake exists and the other denies it, it was the duty of the court to determine which contention was correct, and, by giving judgment in favor of plaintiff, the presumption is that the issue was implicitly found in his favor.

Laches and the statute of limitations are interposed as a defense to the suit. The parties were brothers. Their relations were of mutual trust and confidence. Plaintiff, up to the time that he learned that the defendant had relocated the Midas mine and of the omission in the deed, had implicit confidence in him. Nothing had occurred to interrupt these relations or excite distrust or suspicion until this time, and the suit having been commenced shortly after the discovery of the omission in the deed he is not chargeable with laches.

The deed was recorded March 20, 1877. It is said that the record was notice to the plaintiff of its contents. It may be observed that the record is not notice of anything not contained in the deed. We are satisfied, however, that the statute of this state concerning records (Gen. Stats. 2594) is not intended to impart notice other than to subsequent purchasers and mortgagees. (*McCabe* v. *Grey*, 20 Cal. 516.)

Judgment affirmed.

BONNIFIELD, J.:  I concur.