RALPH MORGALI, VIRGINIA E. MORGALI, AND MORGALI MINING COMPANY, APPELLANTS, *v.* ETHEL B. KAUPP, A SINGLE WOMAN, RESPONDENT.

No. 3744

January 20, 1954.　　　　　265 P.2d 1069.

*Oliver C. Custer* and *Bruce R. Thompson,* both of Reno, for Appellants.

*Gordon W. Rice* and *Harlan L. Heward,* both of Reno, for Respondent.

# OPINION

By the Court, BADT, J.:

Ethel B. Kaupp sued Ralph Morgali and Virginia E. Morgali, his wife, for cancellation and rescission of a deed for some 240 acres of ranch land and improvements alleged to be worth $65,000, executed by the plaintiff to the defendants, and for further relief. She alleged that the relation of client and attorney existed between her and Morgali; that while she was in a weakened physical and mental condition Morgali wrongfully induced, counseled, influenced and advised her to convey the property to him; that she received no consideration therefor; that Morgali thereafter transferred the property to his wife; and that both defendants have since been in possession. It subsequently appearing that both defendants had thereafter conveyed to Morgali Mining Co., that

corporation was joined as a defendant. The defendants answered separately, putting in issue all of the material allegations of the complaint. Morgali alleged that the conveyance to him was for a good and valuable consideration and pursuant to a written contract, which he attached as an exhibit. He alleged as a special defense that the plaintiff and one Tom McCreary, who was then her husband, entered into a certain property settlement agreement whereunder Ethel transferred to Tom the said contract and all indebtedness due Ethel from Morgali thereunder and all rights accruing and to accrue under such contract. The property settlement agreement and the transfer of the contract rights under the Kaupp-Morgali contract were also attached as exhibits, as was a copy of her actual assignment of the contract made pursuant to the property settlement agreement.

As a further defense Morgali alleged that said property settlement agreement was thereafter approved by the Second judicial district court, Washoe County, Nevada, in a divorce action brought by Ethel against Tom, and attached as an exhibit a copy of the findings, conclusions and decree in that action. He alleged that the findings and decree established McCreary as the owner of the rights under the contract and that Ethel was estopped from claiming any rights thereunder. As a further defense Morgali asserted that thereafter McCreary had commenced an action to enforce the terms of the said property settlement agreement; that Ethel by her answer in said case had put in issue the validity of said property settlement agreement and that the court thereafter in such proceeding made its findings, conclusions and judgment, adjudging, among other things, that the assignment by Ethel to Tom of her interest in the Kaupp-Morgali contract be confirmed and ratified, and that such judgment has become final and that by reason thereof Ethel was further estopped from asserting any claims in the property. Copies of the proceedings in said last mentioned action were further

attached as exhibits. As a further defense Morgali pleaded laches. Ethel, as plaintiff, replied to the separate answers, again asserted that she had received no consideration for the property, admitted the execution of her property settlement agreement with her husband, and alleged that the court's judgment in the action brought by Tom against her to enforce the property settlement agreement was to hold that the same was "void and a nullity by reason of mutual mistakes of facts made by the parties thereto, said mistakes consisting of erroneous beliefs entertained by each of the parties as to his and her ownership of or interest in the property which was the subject matter of the agreement." Plaintiff denied all allegations to the effect that her rights under the Kaupp-Morgali agreement were owned by Tom McCreary.

The case was tried to the court without a jury and the trial occupied some ten days. The record before us contains seven volumes comprising over 1,500 pages, in addition to the voluminous briefs filed by the parties.

The trial court made findings as follows: That defendant at all of the times involved was an attorney at law practicing in Nevada; that from February 1, 1948 to March 31, 1949 the relationship of attorney and client existed between plaintiff and defendant, "or if it did not exist during all of that time the influence arising from the attorney-client relationship existed between said parties"; that on August 23, 1948 plaintiff conveyed to defendant and his wife the real property involved in this action containing some 250 acres of agricultural lands with water rights in Douglas County, Nevada, then worth approximately $50,000; that the consideration received by plaintiff for the transfer was "the cancellation of an attorney fee due Ralph Morgali in the amount of $6800"; that on February 18, 1949 defendant conveyed the property to his wife without consideration; that his wife had notice of all of the facts and circumstances of the conveyance; that she

thereafter conveyed to Morgali Mining Company without consideration, which company had never issued any stock, had no assets, and "was the alter ego of Ralph Morgali"; that at the time of the execution of the conveyance from plaintiff to defendant and for a long time prior thereto plaintiff was in a weakened physical and mental condition and was incompetent to transact the business transaction in question, all of which was known to defendant; that defendant wrongfully and fraudulently induced, counseled, influenced and advised the plaintiff to execute the deed and convey the property to defendant and his wife; that plaintiff relied upon the advice of defendant and had confidence in him and at no time had any independent advice in connection with the conveyance; that defendant and his wife have since remained in possession and have not accounted for rents, issues and profits; that defendant "has spent money and made improvements thereon"; that defendant and his wife borrowed $10,000 on the property secured by a deed of trust thereon, which is still a valid lien against the premises, and used the said $10,000 for their own uses and purposes.

The court's conclusions of law and judgment canceled the deed, awarded judgment against defendant and his wife for $10,000 and costs and awarded immediate restitution.

(1) Defendant lists twelve separate assignments of error. Several of them attack the findings as not supported by the evidence and as contrary to the evidence. The first of these has to do with the finding of the attorney-client relationship between the parties, the second deals with the matter of the consideration for the transfer, the third deals with the finding of incompetency of Ethel Kaupp, the fourth attacks the finding that Ethel had no independent advice in the matter of entering into the contract of sale of the property to her attorney. The finding of the value of the property is

also attacked. With the exception of the finding as to the consideration passing from Morgali to Ethel for the conveyance, with which we shall deal later, all of the findings attacked were made under evidence that was greatly conflicting on every point. Testimony concerning the attorney-client relationship over a long period of time occupied many pages of the record. The court's finding as above quoted finds ample support in this record. The same may be said as to the finding of incompetency of the plaintiff. Lay and expert testimony dealt with the subject at great length. Evidence as to whether Ethel had independent advice and evidence as to the value of the property is likewise in direct conflict. These conflicts are so apparent from the record that it becomes entirely unnecessary to refer to the testimony at any length. With substantial testimony to support the findings thus attacked, we follow our well recognized rule and decline to disturb them. Appellant maintains that under our recognized exception to the rule we should hold that the court so patently came to the wrong conclusion that the judgment of rescission must be reversed. But see Davidson v. Streeter, 68 Nev. 427, 234 P.2d 793. We are unable to say, however, that such is the case.

The sales contract in question provided for a sale of the property for $25,000, to which consideration was added the cancellation of accrued attorney fees due Morgali from Ethel in the sum of $6,800 and the waiver by Morgali of any payment of a general retaining fee for a period thereafter. A tentative and rather unsatisfactory valuation of such retaining fee was later given as $2,400. As noted, the court found that the property was worth $50,000. The evidence was to the effect that the cost of the property to plaintiff was some $65,000. The contract provided that Morgali was to obtain a loan on the property in as great a sum as possible, which he was to turn over to Ethel. This was to be credited upon the $25,000 balance. He obtained $10,000 on a first

mortgage but never paid any of this to Ethel. The balance of the $25,000 was to be secured by a second deed of trust, payable within three years with interest at 5 percent. The 1947 hay crop was to be sold and applied on the note. No hay sale proceeds were thus applied. The entire $25,000 balance due from Morgali for the property was, in a manner to which further reference must be made later, relinquished and canceled. Any future services under the general retainer arrangement were apparently made impossible. This leaves as the entire consideration Morgali's relinquishment of his $6,800 accrued attorney fees.

The combination of Ethel's emotional instability, her chronic alcoholism (requiring repeated hospitalization), her erratic actions, her ten or more marriages and divorces (three of which concerned the one husband Tom McCreary), the attorney-client relationship, the undoubted overreaching in the matter of the contract, picture a situation under which no appellate court would be apt to say that the trial court had come to a wrong conclusion in holding that the conveyance should be set aside. In such findings and judgment we find no error.

(2) Appellant contends that the judgment must be reversed because it affirmatively appears that the plaintiff is not the real party in interest; that long prior to the commencement of this action she had sold to Tom McCreary all her interest as vendor in the Kaupp-Morgali contract of sale of the ranch in question. The Kaupp-Morgali contract was entered into August 23, 1948. On January 3, 1949 Ethel and Tom entered into the property settlement agreement whereunder she assigned to Tom her interest in the contract. On the same date a divorce decree was entered, approving the property settlement agreement. On June 9, 1949 McCreary commenced his action against Ethel for enforcement of such property settlement agreement, resulting in a judgment which set aside the property settlement agree-

ment on account of mistake of facts by the parties, modified the distribution of the property in some respects and then ordered "that except as hereinabove set out each party shall have and own all property now standing in his or her name, free from any and all right, claim or demand by the other party." It is asserted by appellant that in view of this judgment and the undenied facts that the rights under the Kaupp-Morgali agreement had therefore been assigned to and stood in the name of Tom McCreary and by reason of the provisions of sec. 8543, N.C.L.1929, requiring an action to be brought and maintained by the real party in interest and by reason of the interpretation by this and other courts of the provisions of such statute, Ethel McCreary was obviously not the real party in interest, not entitled to bring this action and that the same should have been dismissed by the district court on account of nonjoinder of the essential party plaintiff.

The first reaction to this contention, which we shall not pursue at length, is the fact that the action is not brought under the contract, nor for a recovery from Morgali of the sums due thereunder, nor to enforce any of the provisions thereof, but to set the deed aside on the ground of fraud. The second answer to the claim of nonjoinder of McCreary is the fact, clearly established by the evidence, that McCreary, immediately after receiving such assignment, had waived and relinquished all claim against Morgali thereunder. In reply to this, appellant asserts that McCreary's waiver and relinquishment of any claims under the assigned contract could be proved only in an action to which he was a party; that McCreary might "admit the cancellation but deny consideration for it; deny the execution of the release; allege fraud in its inducement or some other matter in avoidance." If we should concede a real, as well as a hypothetical possibility for such a situation, the contention would be a serious one. It becomes necessary however to examine the facts with reference to Ethel's assignment of the contract to McCreary. The time was

January 2, 1949, the day before Ethel's final divorce from McCreary. It was 7:30 p. m., and Morgali's secretary was working overtime completing the typing of the separation agreement. Ethel and Morgali were returning to the office after a brief absence, and Morgali testifies:

"As we were returning to my office Mrs. McCreary asked me about my fee in the matter, over and above my general retainer, since August 26, 1948. I informed Mrs. McCreary that due to the immense responsibility involved I felt that my fee should be substantial. She asked me if I would be agreeable to accept the cancellation of the balance of my obligation under the contract of purchase for the Minden ranch for my fee.

"I told Mrs. McCreary that while I could use cash, that would be agreeable to me if it was agreeable to she and Mr. McCreary.

"She then stated that upon the return to my office she would cancel the contract, or suggested if I had any other method. I informed Mrs. McCreary the property—the contract was probably community property, or at least it was involved in the separation agreement, and I felt it should either go to one party or the other for cancellation, or they should effect a joint cancellation of the contract, the remaining obligations under the contract.

"Mrs. McCreary then suggested that it be assigned to Mr. McCreary with the instructions to him to cancel the balance of the obligation immediately in full payment to me for the services over and above the general retainer that I had performed for the parties to date.

"I told Mrs. McCreary whichever way she desired was all right, but that I would prefer it to be assigned to her and she cancel same. She stated in that way, the way that she desired concerning the assignment to Mr. McCreary, that it would stop him from any future—oh, any future obligation or any future payment for any work that I may have performed for the community of Mr. and Mrs. McCreary during their last marriage."

Accordingly the distribution agreement included in the description of the property to go to McCreary the following:

"That certain contract note and/or evidence of indebtedness due Ethel B. McCreary as part of consideration of sale for that certain premises known as the Minden Ranch (Tietje Ranch), Douglas County, Nevada."

On the following day, January 3, 1949, the agreement was signed and acknowledged by the parties, and in the afternoon of that day Ethel's divorce case was called up for hearing by Morgali and the decree signed. Thereafter Morgali and his client left for his office "to execute the assignment of the balance of the obligation under the contract to be canceled by Mr. McCreary as I [Morgali] had prepared it during the day." Morgali prepared an instrument of cancellation, and McCreary called at his office the following day, January 4, "to carry out his understanding of the instructions given." This release recites that he has been paid in full by the grantees in the Kaupp-Morgali contract and forever releases and discharges Morgali and his wife from all claims and demands from the beginning of the world to date. The release is general and couched in the most comprehensive terms. The gist of the entire matter was that Morgali was to be relieved of his obligation under the contract to pay $25,000. At the moment the contract was owned by Ethel. Morgali seemed to feel that rights under the contract should definitely vest in one or the other of the marital parties and be by that one released or that the release should be executed by both. According to Morgali, Ethel seemed to want McCreary's signature on the release so she assigned to McCreary and McCreary released. McCreary's relationship could hardly be dignified even by the name of agency. He was a mere conduit through which the transaction passed. The importance of the actualities of the situation lies in the fact that it is established by the sworn testimony of Morgali against his present contention that he is in danger of being subjected to some future suit by

McCreary for the $25,000 balance. The inadequacy of this contention is emphasized by the fact that both Ethel's assignment and Tom's release were immediately delivered to Morgali, who thereafter retained possession of both instruments. The contention that McCreary was the real party in- interest and an indispensable party plaintiff to the present action is without merit.

(3) It is next contended that the judgment of February 21, 1950, in McCreary's action to enforce the January 3, 1949 divorce decree and settlement agreement (as well as the judgment of January 3, 1949, itself) is res judicata as fixing the ownership of rights under the Kaupp-Morgali contract in McCreary. This contention derives from the fact that such judgment, after requiring conveyances of certain properties by one party to the other, decreed "that except as hereinabove set out each party shall have and own all property standing in his or her name, free from any and all right, claim or demand by the other party." But in no sense was this an adjudication that McCreary was the owner of such rights as to make him the real party in interest in the present action. Thirteen months before the judgment in question he had relinquished and waived all rights that had possibly momentarily vested in him under his wife's assignment. The plea of res judicata is not good.

(4) Appellant assigns as error the failure of the trial court to require the return by plaintiff to defendant of the consideration paid by defendant. This refers to the $6,800 attorney's fees due defendant from plaintiff for services, no part of which has been paid. The trial court, in considering the value of the property as against the purchase price fixed by the contract, included in such purchase price the $6,800 attorney fees. It recognized that defendant did considerable work for plaintiff as shown by the voluminous record including sixty-nine exhibits, and that he had not been paid. It said: "The

testimony was that upon the interview at the Allen ranch in July, 1948 the defendant presented his bill for $6800. The client thought this reasonable." This finds ample support in defendant's testimony of his presentation of his accounts, the plaintiff's examination thereof, her conclusion that they were fair and her promise to pay the same at a later date.

It should be noted that the amended complaint contained the following paragraph:

"That in event the court holds that plaintiff received any consideration for the said transfer and the said execution of said deed, the plaintiff offers to account for any consideration received and to do equity in all respects."

When it came to preparing the findings, plaintiff submitted a proposed finding as follows: "That at no time did plaintiff receive any consideration from anyone for the said transfer and conveyance of the above described real property."

Defendant proposed to strike said entire finding and to insert in lieu thereof "That plaintiff did receive consideration from defendant Ralph Morgali for the transfer and conveyance of the real property described herein." The court rejected both of said proposed findings on this point and found:

"That the consideration received by plaintiff for the said transfer and conveyance of the above described real property was the cancellation of an attorney fee due Ralph Morgali in the amount of $6800."

It would appear that the court adopted appellant's theory and the testimony in support thereof to the effect that the accounting showing a $6,800 balance due defendant was agreed to by plaintiff; that this amount was actually due and was the consideration paid. Respondent contends on the contrary that there was no proof of the value of defendant's services, that the burden was upon defendant to prove such value, that the facts preclude a setoff of this amount against the $10,000 judgment and that the authorities supporting

the general rule requiring the plaintiff to do equity and requiring a return of the consideration upon the annulment of a conveyance of real property do not involve cases of attorney-client relationship. We do not find these contentions sound. In view of the account stated (supported by hundreds of pages of testimony and 69 exhibits), the examination and approval thereof by the plaintiff and her promise to pay the same, all of which were found in the court's opinion, if not in its findings, neither proof nor finding as to reasonable value was essential on this item, asserted as a setoff against the $10,000 judgment. Section 8923, N.C.L.1929, provides in part: "The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law." Such an element was not considered in Martin v. Dixon, 49 Nev. 161, 241 P. 213, relied on by respondent.

There is nothing inconsistent in supporting on the one hand the court's finding of Ethel's lack of competency to enter into the Kaupp-Morgali contract (when considered in connection with the attorney-client relationship, the inadequacy of price, the overreaching by the attorney, etc.) and the court's finding that a month earlier, namely, on July 25 or 26, 1948, Ethel was competent to approve an account stated by Morgali with reference to his attorney fees accrued to that date. Again we find it unnecessary to review the testimony. It is evident however that Ethel's chronic alcoholism, from her first conferences with her doctor in Reno in January, 1948, through her three divorces from McCreary, her property settlements with him, her dealings in real estate, her many matters of litigation, etc., up to the time of the commencement of this action in May, 1950, did not incapacitate her at all times and in all places and in all matters from entering into business transactions. The court made its finding of fact with reference to the "$6800 attorney fee due Ralph Morgali," deliberately and advisedly and after rejecting a different finding

proposed by each of the parties. The authorities submitted by respondent requiring proof of the reasonableness of the attorney fees asserted in various kinds of actions do not apply here.

In view of the court's finding, it was error not to set off the $6,800 attorney fees against the $10,000 judgment.

The judgment of rescission and the order denying new trial with reference thereto are hereby affirmed. The judgment in favor of plaintiff and against defendant for $10,000 damages is reversed, and the case is remanded to the district court with instructions to enter as a credit against said judgment the sum of $6,800 and to enter judgment against defendant for the balance, namely, $3,200.

Each party will pay his or her own costs in this court.

EATHER, C. J., and MERRILL, J., concur.