ELMER S. HEWARD, Appellant and Cross Respondent, *v.* JAMES SUTTON, an Incompetent Person, by His Guardian, GILBERT SUTTON, Respondent and Cross Appellant.

Nos. 4127 and 4128

November 4, 1959                    345 P.2d 772

(Petition for rehearing denied December 10, 1959.)

*C. B. Tapscott,* of Reno, for Appellant and Cross Respondent.

*Sinai & Sinai,* of Reno, for Respondent and Cross Appellant.

## OPINION

By the Court, McNamee, C. J.:

Heward has appealed from a judgment rescinding a contract of sale of a metal press and awarding Sutton damages in the sum of $9,312.50 for his loss of use of said press. Sutton filed a cross-appeal contending that the damages awarded him are inadequate.

On December 14, 1951, James Sutton, by a contract of sale, sold a metal press to George Cook for $2,500. The bill of sale was deposited in escrow with First National Bank, which was directed to receive the purchase price in installments on behalf of the seller and to deliver the bill of sale to the purchaser upon receipt in full of the purchase price. The metal press was of the

454

value of $4,500 at the time of sale, according to the findings of the trial court.

On March 27, 1952, Gilbert Sutton, as guardian of the person and estate of James Sutton, incompetent, gave notice in writing to Cook of rescission of said contract of sale and of demand for return of the press. The press was not returned and thereafter Cook sold his interest in the contract to Heward.[1] This action was then commenced against both Cook and Heward, but Cook is not a party to this appeal.

Heward's main contention on this appeal relates to the sufficiency of the evidence to support the finding that James Sutton was on December 14, 1951 mentally incompetent to enter into the contract of sale.

The record discloses without contradiction that James Sutton had a history of incompetence since 1947. He was first hospitalized at Livermore Sanitarium for mental illness in July 1947. He was then hospitalized for a month and a half at the Sansum Clinic where his illness was diagnosed as paranoiac psychosis. Thereafter, from May 2, 1949 to July 30, 1949, he again was a patient at Livermore Sanitarium, his illness diagnosed as schizophrenia paranoid type. After July 30, 1949 he was at liberty to roam about the country and did so until his commitment to the Nevada State Hospital in March 1952 as a chronic schizophrenic paranoid type, where he has been confined ever since. While he was at large, he spent some time in Washington, D. C. and at various places on the west coast.

The testimony of Dr. Sidney J. Tillim, superintendent and medical director of Nevada State Hospital, was received without objection and was positive to the effect that James Sutton, on December 14, 1951 at the time he executed the contract of sale, and for several years prior thereto was mentally incompetent because of insanity. This testimony was based upon not only personal observation and examination (he first met James Sutton in February or March of 1947) but also the records of the subject's medical history.

Dr. Tillim's conclusions were corroborated by at least

_____
[1] We are not concerned with the question of whether Heward was a purchaser for value without notice.

one other witness. No expert testimony to the contrary was offered or received in evidence.

■■■■■■

Contractual capacity is a question of fact to be resolved in the light of the surrounding circumstances. Hawkins v. Randolph, 149 Ark. 124, 231 S.W. 556.

■■■■■■

"The mental incapacity that affects the validity of a contract must be of the time in which the transaction occurs, regardless of previous or subsequent insanity." 17 C.J.S., sec. 133a., n. 22–24.

■■■■■■

We hold there is sufficient evidence to support the court's finding of mental incompetence existing at the time of the execution of the contract of sale and that, therefore, the action of the court in decreeing that said contract be canceled and annulled and of no force and effect was proper.

Counsel for appellant has conceded that "the crux of this entire case is whether or not the respondent was insane on December 14, 1951" and that the "other questions or problems arising in connection therewith are merely incidental to the main issue."

There are, however, still other matters which require our consideration.

■■■■■■

The court having found that respondent had the right to disaffirm the contract, it could then require appellant to pay respondent the rental value of the metal press during the time appellant and Cook had possession of the same. Allenbach v. Ridenour, 51 Nev. 437, 279 P. 32. This principal of law seems to be conceded by both parties. But a question arises as to the ascertainment of such value.

At a pre-trial hearing before the court it was stipulated by the counsel for the parties that the rental value of the metal press was $300 per month.[2] Because of

---

[2]It was suggested in the briefs that counsel for appellant agreed to this figure in order to give more weight to his contention that he could have made $40,000 in the use of the metal press.

such stipulation no evidence pertaining to the value of respondent's loss of use of said press was presented to the trial court. The court in its written decision stated that "plaintiff is entitled to rent from December 14, 1951 not at the rate of $300 per month but at the rate of $125 per month, which sum is reasonable under all the circumstances," and made findings to correspond. Its judgment based on such findings awarded respondent damages in the sum of $9,312.50 for loss of use by respondent of said metal press from December 14, 1951 to February 28, 1958, the date of the judgment. Respondent claims this to be error because the trial court should have allowed a *per mensem* of $300 pursuant to the stipulation. Appellant argues that, because the court failed to adopt the stipulation as made by the parties, it in effect was giving relief against the same which requires the entire stipulation to be set aside.

We cannot agree with either contention. Rule 16 NRCP gives the court power to modify stipulations to prevent "manifest injustice."

While the date of the pre-trial conference when the stipulation as to rental value was made had to be some time prior to the date of trial, the record does not disclose that date. However, it does show that the complaint was filed April 24, 1952; that the case was at issue September 8, 1953; that the trial did not take place until July 2, 1958; that during the pendency of the case in the court below, appellant had six different counsel.[3] Under such circumstances the trial court properly could have concluded that the delays were unforeseeable at the time the stipulation was made and that "to prevent manifest injustice" it was necessary to reduce the amount of the monthly rental that the parties theretofore had agreed was reasonable.

Appellant's claim of offset unrelated to any act of respondent or of respondent's guardian in his representative capacity is without merit.

---

[3] On appeal, two other counsel at separate intervals of time have represented appellant.

As to each appeal the judgment is affirmed. Each party will pay his own costs on appeal.

BADT and PIKE, JJ., concur.