PAUL E. NAU, JR., Appellant, *v.* NORMAN G. SELLMAN AND JACQUELINE McMONAGLE, Respondents.

No. 18606

June 24, 1988 · 757 P.2d 358

*Richard F. Cornell,* Reno, for Appellant.

*Ohlson, Edmiston and Aimar,* and *Mary K. Bickett,* Reno, for Respondents.

# OPINION

*Per Curiam:*

## The Facts

Appellant Nau, a real estate appraiser and broker, owned a lot in Incline Village on which he had constructed a house foundation. In 1980, he sold this lot to respondents Sellman and McMonagle. The lot, at the time of sale, contained some trusses, a garage door, assorted construction lumber, as well as severed timber, some of which Nau had chopped for firewood. There was no mention of the timber or firewood in the sales and escrow agreements between the parties. The parties disagreed, at trial, as to what oral agreement about the firewood, if any, was reached at or before the time of sale.[1]

Four years after the sales transaction, Nau, apparently acting under the belief that the firewood was still his personal property, returned to Sellman's lot, on which in the interim Sellman had constructed a house. Nau noticed that some of the wood, which previously had been there, was missing. Nau knocked on Sellman's door, but Sellman was not there at the time. Nau then spoke with a next door neighbor, Janice Jackson. Jackson told him that someone had been taking the firewood from Sellman's lot. Concluding that someone was stealing his firewood, Nau informed Jackson that he was going to reclaim his wood and asked if he could gain access to it by using a small road on her property. He also left her his card with his name and number in case anyone concerned about the wood wanted to contact him. He then spent most of the next day at Sellman's lot, loading the firewood. He loaded approximately two to four cords of wood, making several trips. Nau testified that shortly thereafter, he tried

---

[1]Nau testified that before the lot was sold, he reached a gentleman's agreement with Sellman that "if he would allow me to leave [my] wood there [on the lot], that he would be free to use what he needed for his home there." He added "I thought that he had agreed to allow me to leave the wood there, with the freedom on his part to use what he needed for his home, and that when I wanted some wood, or needed some wood, I could come get some, also."

Sellman, however, testified that Nau merely told him, before the sale, that "I [Sellman] would have wood for many years." Sellman interpreted that statement to mean that Nau was including the firewood with the sale of the lot, even though the wood was not included in the sales agreement.

to inform Sellman that he had taken the wood, but because Sellman's phone numbers in Palm Springs and elsewhere were unlisted, Nau could not reach him.

When Sellman and McMonagle returned to their house, they discovered the wood was missing. They spoke with their neighbor and she told them Nau had taken the wood. Without attempting to reach Nau, they then contacted the police and informed Officer Salkowski that Nau had taken the firewood—which they valued at approximately $1,500—without their permission. After questioning Jackson, Salkowski filed a criminal complaint against Nau, and he was subsequently arrested for grand larceny.

Although at the preliminary hearing Nau protested his innocence, arguing that he thought the wood was his, Nau was bound over.[2] He later entered a plea of nolo contendere to trespassing. He was fined $50 and ordered to pay $500 restitution to Sellman. Nau then filed a civil action against Sellman, alleging false arrest and negligent infliction of emotional distress. Sellman filed a counterclaim, alleging that Nau had earlier committed fraud when he sold Sellman the lot.

The jury found for Sellman and McMonagle on Nau's false imprisonment and negligent infliction of emotional damage actions; it awarded Sellman and McMonagle $8,000 for their counterclaim alleging fraud. The district court also awarded Sellman approximately $7,000 in attorney fees. Nau appeals.

### Discussion

Two years after Nau sold Sellman the lot, Sellman discovered that the foundation Nau built extended about seven feet into a setback area. As a result, the County halted construction on his house until he obtained a variance. When Nau sued Sellman for false arrest, Sellman counterclaimed for fraud, alleging Nau had misrepresented that the foundation on the lot was "legal," when in fact it was both "set back" and "out of square." As noted, the jury awarded Sellman $8,000 on this counterclaim.

Nau argues that there is no substantial evidence to support the jury's conclusion that he defrauded Sellman. After examination of the record, we agree.

To prove fraud, Sellman needed to show: (1) that Nau made a false representation (2) with knowledge of its falsity (3) and with

---

[2]Justice of the Peace Pope, after considering the evidence presented in the preliminary hearing, bound Nau over. However, he immediately thereafter issued a Statement of Error in which he declared that "The Court, upon further reflection, believes that it did not have probable cause to support a determination in favor of the State on the element of knowing intention to permanently deprive the owner of the property alleged to have been stolen."

the intent to induce a sale through reliance on the misrepresentation. Sellman also needed to show that (4) he justifiably relied on the misrepresentation, and (5) he suffered damages as a result of his reliance. Sanguinetti v. Strecker, 94 Nev. 200, 206, 577 P.2d 404, 408 (1978). Despite counsel's attempt, during oral argument, to support and justify the jury's verdict, the record simply reflects no significant support for any of the elements of fraud. Accordingly, we reverse the jury's verdict on the fraud action and $8,000 award.

Nau also argues that the district court committed error prejudicing his false arrest cause of action. At trial, Mr. Kenneth Howard, a Chief Deputy District Attorney, testified for Sellman about Nau's arrest and prosecution. Howard first testified that in his opinion, Nau was guilty of the crime of grand larceny. He then added that he had seen thousands of guilty defendants, and, judging by Nau's demeanor in the preliminary hearing, Nau also "acted like a guilty guy." Nau's trial counsel did not object. Nau argues that by allowing this testimony, the district court committed plain error.

In Winiarz v. State, 104 Nev. 43, 752 P.2d 761 (1988), this court concluded that it was error for a court to allow an expert to testify that the defendant was a murderer and thereby usurp the jury function. In this appeal, Howard's testimony that Nau was guilty of grand larceny was tantamount to testimony that Sellman was not liable for false arrest. And, with due respect to Howard's ability to perceive guilt based solely on appearance and demeanor,[3] his opinion on the subject was improper and should not have been admitted.

Nevertheless, we conclude that the improper testimony is not a basis for reversal of the false arrest verdict. In order to prove false arrest, a plaintiff must show the defendant instigated or effected an unlawful arrest. However, as Restatement (Second) of Torts § 45(A) comment c (1965) notes:

> It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.

---

[3]The prosecutorial judgment that Nau was guilty of grand larceny may not have been too keen. Not too many would-be thieves leave their business card, with name and phone numbers, at the neighbors, ask permission to use their road, and then spend all day, in broad daylight, purloining firewood of a quantity hardly worth the risk of apprehension and criminal prosecution.

In this case, Nau did not show that Sellman or McMonagle misrepresented or neglected to provide any material information, in their report to the police officer, about the circumstances surrounding the firewood. The record on appeal suggests that Sellman and McMonagle accurately and fully reported their personal knowledge about the loss, to Officer Salkowski, under a good faith belief that the wood was theirs and wrongfully taken and left the decision whether to instigate charges up to the police and district attorney's office. Accordingly, although we reverse the jury verdict with respect to Sellman's fraud counterclaim and the district court's award of attorney fees,[4] we affirm the jury verdict that Sellman and McMonagle are not liable for false arrest.

---

[4]*See generally* Barnum v. Williams, 84 Nev. 37, 42, 436 P.2d 219, 222-23 (1968).